May it please the court, my name is Petter Bertling, and I am the attorney for Appellant Dalonte Foard, who thanks this court for considering this matter. In December of 2020, a grand jury returned a multi-count indictment against Mr. Foard and three other individuals. That indictment was returned in the District of Nebraska. The lead count was conspiracy to sex traffic minors, and the two other counts relevant to Mr. Foard were sex trafficking a specific individual, MJ, and another specific individual, MD. Mr. Foard raises the question among others today of whether he was tried on a charge that the grand jury did not make. As the court knows, the indictment placed Mr. Foard on notice of what the government accused him of doing. Specifically, the indictment informed him of the charges against him, and by correlation, what the government would be required to prove at trial. This matter did proceed to indictment verbatim to the jury, and then proceeded to present evidence consistent with a theory that Mr. Foard had, A, engaged in a conspiracy to sex traffic both MJ and MD, and B, had independently engaged in activities to sex traffic these two individuals. However, during the course of trial, evidence unfolded in such a fashion, and the court has the benefit of the transcript, to realize that MD was less a victim of the crime and more an uncharged co-conspirator. We also know that to be the case based on some concessions that the government appears to have made in the brief of the appellee in the provision of the brief that discusses hearsay materials when the government addresses MD in the alternative as either an uncharged co-conspirator or a victim, but relies frankly on the former rather than the latter. Mr. Foard's position with respect to count one of the indictment, the lead count, conspiracy to engage in sex trafficking minors, is that instructions that the district court provided to the jury resulted in the court reading language out of the indictment that specifically removed something essential, that is essential elements from the indictment, allowing the jury to return a verdict against Mr. Foard that did not contemplate what the grand jury charged him with. Specifically, in order to assess whether the indictment was reflected accurately in the language of the indictment. The indictment indicates that Mr. Foard engaged in a conspiracy to, among other things, provide transportation to two minor females, and then the indictment within the context of the same paragraph lists those two minor females a total of five times when describing Mr. Foard's alleged criminal culpability. The two minor females are always joined by a conjunctive and, and the descriptors are always used as modifying language for the indictment's charging element or essential element that Mr. Foard engaged in a conspiracy to sex traffic two minor females. This is in fact the alleged offense, and this is the offense that the grand jury returned against Mr. Foard. The use of terms two minor females, five modifiers of minor victim one and minor victim number two, are not superfluous language, and they were not included carelessly. And the reason we know this is twofold. Number one, the trial transcript. At the time of trial, the government unequivocally presented count one as a connected activity in which it accused Mr. Foard of engaging in factual conduct that resulted in the sex trafficking of minor victim one and minor victim two, M.J. and M.D. respectively. The second reason we know this to be true is in the brief of the appellee and its subsequent augmentation, there appears to be two concessions that suggest that the government acknowledges that the court's instructions did change something material and essential about count number one. The first acknowledgement is found at approximately pages 21 through 23 of the brief, where the government talks about its ability to narrow the content of an indictment. So why isn't this just exactly that, a permissible narrowing under United States v. Miller? Well, Judge, I think that's a very reasonable question in this context. The first is the government never made an election to narrow this indictment. The government talked in its entirety, in this case, about a conjunctive activity that Mr. Foard engaged in beginning from the time he drove a vehicle to a foster home owned by Jabana Lloyd and picked up M.D. and M.J. This was a collective act. This was never to be a severed or separate act. It wasn't until the conclusion of trial when defense counsel objected to these instructions that the government said, well, we have the ability to prove this in the alternative. And that's essentially what they've tried to do, is sever their own charge. It's still a crime, right? Sex trafficking of minor? Yes, it is still a crime. Conspiracy to sex traffic one is just as much a crime as conspiracy to sex traffic both. I concede that. That's true. Under the statute, sex trafficking in individual or two people is a crime. But, Judge, I direct your attention to the Court's model instruction 6.18-1591. That instruction talks about the crime of sex trafficking, and then the Court has a bracket, of children. That's a plural. And in this specific case, the argument that Mr. Ford is making is that the indictment put him on notice that the government's intention at trial was to charge him for specific facts involving September 24, 2020. And that's what he defended against. And in fact, his defense, in part, was successful because the jury acquitted him of the count involving M.D., which it is his position that that acquittal compelled an acquittal on count one. And he points to the jury's question that it returned to the district court judge in deliberations where the jury asked the court, if we find that an element is missing, do we have a hung count or a hung jury? That is clearly a reference to the fact that count one is pled as a collective or conjunctive activity. It was argued, and the evidence that the government presented was collective and conjunctive. And the jury then realized we are going to acquit this gentleman of one of the trafficking counts, so aren't we then compelled to acquit him of this lead count based on what we were told? Defense objected, and the court on its own said, no, these are separate charges. And they're not separate charges in this case. If you're asking me, theoretically, under 1591, can a person be convicted of multiple individual counts of sex trafficking, the answer is of course. But if you're asking me in the context of U.S. v. Galante Ford, that's not correct. What I perceive, as Mr. Ford's counsel is, is that effectively the government is trying to have it both ways. They wanted to argue at the time of trial and in fact did argue at the time of trial and presented both their theory of the case and the case itself based on a collective event, realized that there was a problem with one of the components of that event, one of their purported victims, and then changed and said, well, forget the fact that we planned this as two. We can show it is either A or B. And that's what the briefing also shows. The briefing is a series of arguments about even if it doesn't look like we planned it and showed it, it doesn't count. It happens at trial. We've all seen that happen at trial. Facts don't always come out exactly as you expect them to. Unquestionably, Judge. Let's change the fact. Let's say this was a conspiracy to distribute methamphetamine and heroin. And they get halfway through the trial and heroin doesn't go so well. Can't they submit on methamphetamine? Well, Judge, the case law that the government cited, we're talking about Spencer and Thompson and Crawford, talk about those specific issues. And I concede that in the context of drug cases, that this court has issued a series of rulings over time saying if multiple different drugs are pled and the government can only prove drug A, they don't have to prove drug B to establish a conviction. What's the difference? The difference here is that no such election by the government was made. And what effectively happens is, is Mr. Ford is notified based on this pleading that he is defending the event of September 24th based on these two victims. And then at the time of trial, it changes. So that's the constructive change. That is the entire change. His entire defense, if you didn't get involved in sex trafficking these two women, what happened was the victim of the acquitted count recruited the other victim with the help of someone else. And they set up a conspiracy. They asked me for a ride. I'm speaking as Mr. Ford. I provided a ride in exchange for gas money. And that was a separate and independent act, which is also part of Mr. Ford's argument on the hearsay admissibility. But I think we know that's also true, Judge. I didn't finish the thought. But with the augmentation of the government's brief, part of the notion of conjunctive versus disjunctive is the sense that the government is saying exactly what Mr. Ford is saying. Is this your argument that he wasn't put on notice with the indictment? Because he was put on notice of A and B. Right. And B disappears. He's still on notice about A. Certainly he's on notice that he's been accused of that. And I would take it one step further, Judge, and acknowledge the other counts, four and five, also put him on notice because those are, in some sense of speaking, subsets of count number one. But the difference is how the case was trial from the academic consideration of could the government present this in the alternative? The answer is yes, the government can always present the case in the alternative. But they didn't. And the notice that Mr. Ford was on was he was defending this event from this day on this set of facts. And so that academic notice of yes, the government could do this is inconsistent with how they actually pled it and what the grand jury actually returned. We don't have the benefit in the record of the grand jury testimony, but I suspect knowing the record at trial that that would reflect the same presentation that the government gave at trial because Special Agent Worcester, who testified at both proceedings, indicated at least through inference that she had provided the same testimony at the grand jury proceeding. And I'm into my rebuttal, so I would like to reserve that. Thank you, sir. Very well. Thank you. Good afternoon, Your Honors. My name is Sean Lynch. May it please the Court, opposing counsel, I'm an assistant United States attorney from the District of Nebraska, and today I represent the appellee, the United States and the United States versus Delonte Ford. We're asking that this court affirm the judgment of the district court and the conviction of Mr. Ford. There are five issues raised on appeal, and I intend to address each in turn. It appears from Mr. Bartling's argument that the main point of contention, at least, is the first issue on appeal, which is the contention that the indictment was constructively amended through the jury instructions. Earlier this week, on Monday, I filed a 28-J letter with this court, which provided some supplemental case law. Basically, the cases carry the proposition that the government is entitled to charge in the conjunctive and prove in the disjunctive. That's well established through this court's case law, and Judge Grunder, through your questioning and your hypothetical about basically a conspiracy to distribute a controlled substance, it's very akin to this court's prior decision in United States versus Moore. Basically, what the defendant or what Mr. Ford is claiming is that he wasn't on notice and that the government somehow augmented or increased the charges that he was facing in this case by the jury being instructed in the conjunctive in this case, and that simply is not what happened. The way that the indictment was instructed, Mr. Ford is on notice that he could be convicted in one of three ways. One, that he sex-trafficked MJ, that he sex-trafficked MD, or that he sex-trafficked both. That's what was alleged at trial. That was the evidence that was adduced at trial. Ultimately, the jury only found that he sex-trafficked MJ. That is consistent with this court's decisions in prior cases on how conspiracies are pled in controlled substance conspiracies, as well as in possession of firearms by appropriated persons, whether it's ammunition or a firearm. It's pled in the conjunctive and then proved in the disjunctive. I don't believe that this was instructively amended. It didn't broaden the charges that Mr. Ford was facing by any stretch of the imagination. I don't think anything was inappropriate there. I do take issue with the statement that Mr. Bartling happened at the end of trial. This was not something that the district court or the government brought up at the end of trial at the jury instruction conference. The record is clear. Mr. Bartling brought up his objection to the court's instructions with jury instruction number one at the beginning of trial before the jury was ever instructed. He was on notice before this matter was ever underway that the government intended to have and was going to ask the court to instruct the jury in the disjunctive. That's what happened. That's what is appropriate in this place. Yes, sir. The instructions, instruction number 12 talks about count four and the elements that are set forth concern MJ. Then instruction number 13 talks about count number five of the mentions. If you look at the indictment, each of those counts mentions both. Is that correct? I'd have to refer to the indictment, Your Honor, but I believe each count four refers to MJ specifically, count five refers to MD specifically, and then count one is a conspiracy to commit both MJ or sex traffic both MJ and MD. I believe they're both referenced in count one, but independently in counts four and five. But on the crime of sex trafficking, they're charged individually. Correct, Your Honor. Outside of the conspiracy, individually. Yes, sir. That's what I'll confirm. Yes, Your Honor. I don't believe that the indictment was constructively amended or broadened in any way. There's no clear error or any sort of abuse of discretion that took in this case. So I would ask that the court affirm the district court as it relates to that issue. As it relates to the issues of the co-conspirator statement, the district court properly followed the case law and the protocol under Bourgeollais versus the United States. There's ample discussion at the beginning of trial, prior to the co-conspirator statements being admitted, and then at the conclusion of evidence about the co-conspirator statements where the court made clear factual findings as to why this was a co-conspirator statement and how Mr. Ford was a member of that conspiracy and how these statements were in furtherance of that conspiracy. So those statements were properly admitted and it was not an abuse of discretion. As it relates to issue number three, Your Honors, for the Rule 29 motion or the judgment of acquittal, reviewing the evidence in the most light, most favorable to the verdict, there's clearly evidence that any rational trier of fact could arrive at the conclusion that Mr. Ford is guilty of counts one and four of the indictment. I would point the court to a prior holding in the United States versus Gabe that a victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt. I think that a common issue with Mr. Ford's brief and his claims to this court is his arguments are largely predicated upon his own testimony, his own testimony that's in conflict with other witnesses, his own testimony that's been rejected by the jury. And when looking at the totality of the circumstances and what the jury ultimately concluded and what the victim testified to, there's ample evidence that he was guilty of the crimes that he was alleged to have committed and that the jury found that he committed. He did pick up the minors. He did drive them to the hotel. He did have sex with the victim as the victim testified. He said that if she wanted to do this kind of work that he had to let her for the second ad to be posted on the internet for the sex trafficking ad, he was giving evidence that he posted that, right? Correct, Your Honor. I believe that was testified to both by the victim, MJ, as well as by Ms. Hickman, who is the mother of Mr. Ford's child in her testimony. Specifically, Your Honor, that was for Ms. Hickman, that was 372 lines 4 and 12 in the record. Ms. Hickman also confirmed what the victim, MJ, testified to that Mr. Ford was communicating what the customer's requests were to the victim as they were being relayed to him by Ms. Hickman. The victim stated that Mr. Ford told the victim to put money on the table before sex acts occurred. He discussed splitting the money, excuse me, with MJ before the customers arrived, and he stated he would be there for protection. Then after this sex act and these events occurred at the hotel, he then continued to reach out to her to continue trying to have her engage in commercial sex acts or escorting on his behalf. Your Honor, I believe that in reviewing the light most favorable to the verdict, issue number three, again, should stand and that this the district court's denial of the Rule 29 motion. As it relates to the guideline calculations, Your Honor, there's no procedural error that occurred by the district court. More importantly, as Judge Bisher of the trial court stated at the sentencing, regardless of any sort of guideline calculation or specific offense characteristic determinations that he did receive was within the guideline range, so it would be presumptively reasonable. But looking at the specific offense characteristics that are at issue before the court today, electronic communications were used. That's abundant from the record, both from the victim, MJ's testimony, as well as from Ms. Hickman, and by the very nature of that this was a sex ad that was posted on the internet, and that Mr. Blue, the purchaser of this commercial sex, had communicated by phone and he testified to that as well on that trial. The obstruction enhancement was properly applied. He did attempt to influence testimony, which was related through testimony by Ms. Hickman, and then he also, there's at least an inference within the record that Mr. Ford had deleted evidence from his phone prior to his contact with law enforcement. The vulnerable victim enhancement is also properly applied. MJ was a foster child who had snuck out of her foster mother's home. She had diminished cognitive abilities, as the district court noted, and applying that specific offense characteristic, the district court had even made a pre-trial ruling that she would be permitted to testify with a stuffed animal, which is only further indicative of her diminished mental capacity, and made the finding that because of Mr. Ford's time spent with MJ, there's no way he would not have been able to observe her cognitive limitations. The victim testified that she was scared and anxious throughout this entire encounter. Mr. Blue, who was the commercial sex purchaser who met with the victim, also testified that she was odd and inexperienced, which further supports that enhancement being applied. Similar inferences could be, similar reasons, excuse me, losing my voice after sitting here this morning, also support the finding of the undue influence. But again, Your Honors, Judge Bisher, in imposing the sentence, found under 3553A that his sentence would be the same of the guideline calculation. And lastly, Judge, when it comes to the reasonableness of the sentence, Mr. Ford's main contention is that his sentence is disparate from the co-defendants in this case. It is notable that the three co-defendants all sought out and accepted plea agreements with the government. Mr. Ford chose to go to trial. But when it comes to the disparate sentencing, that is something that the trial court specifically considered, and it's discussed at length in the record. The trial court specifically noted that a sentencing disparity was specifically warranted in this case, given the nature of the crime, that Mr. Ford had absolutely no remorse or acceptance of his criminal activity. The crime was horrific. Mr. Ford's guidelines were higher. He had picked up and drove the victims. He had placed the ads. He had had sex with the victims, which is a factor that none of the other co-defendants had committed in their offenses. He also committed the offense while he was wearing an ankle monitor, which the trial court made the determination that that was indicative of future potential recidivism or lack of remorse or rehabilitation. So, Your Honors, for all of those reasons, the judgment of the trial or the district court should be affirmed. And if there are no questions from the district or from the judges, I'll yield the rest of my time. Hearing none, thank you. Thank you for this final opportunity. I think what Mr. Lynch, my colleague, just characterized to the court is exactly Mr. Ford's point. He told you that the charging instrument in this case gave the jury the following options, count four to convict MJ, count five to convict MD, and then Mr. Lynch's words, count one to convict both. That's Mr. Ford's point. The effect of the way this case was prosecuted was MD was read out of count one. Wait, wait, wait. Those are two different charges, right? We've got a conspiracy charge, and then we have individual charges, both. Conspiracy is a different charge than the individual charge, correct? Agreed. Elements are totally different. There may be some overlap. Totally different. There's some overlap. But what I mean is this is the presentation we got at trial that both doesn't refer to both conspiracy and sex trafficking. Both refers to MD and MJ. That's how the government went forward with this case. I think you'd have a decent argument if it was conspiracy A and B and proof was C, but I'm not sure you got a great argument when it's one or the other. Well, and I think that that's a good point, but I think that helps Mr. Ford. The conspiracy A and B relates to an element that the government has to prove that Mr. Ford sex conspiracy is, you know, entering an agreement to commit an illegal act, right? It doesn't have to be A and B. I understand, but as pled the government, and as argued, the government said that this is what he did with these individuals. They didn't try to sever it. That's Mr. Ford's position. I refer to the court, perhaps for some instruction, U.S. v. Yao, 739 F. 2nd 385, a case from the circuit in 1994 that discusses this kind of disjunctive. In my last few minutes, I want to point out that Mr. Ford relies more than on just his testimony. Page 7 of the brief of the appellant lists as Ms. Hickman, who was a witness for the government, cites the record Ms. Hickman creating a second commercial sex account, photographing MJ, posting MJ, engaging with commercial sex buyers, using her cell phone to do that, brokering the exchanges and setting up the exchanges, all cited to the record. I will submit the matter on the other arguments, including the argument about sentencing disparity, but I do ask the court to acknowledge that this is more than a disparate sentencing practice among co-defendants. That is true, and there's a discussion about how this court has both rejected that concept and, at some times, accepted it. But the other point is on page 40 of the brief of the appellant, there's a lengthy discussion of the substantial disparities amongst national sentencing averages for Mr. Ford that goes well above and beyond anything related to his co-defendants in this case. Thank you, Mr. Berman. Thank you for the opportunity.